## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HAROLD M. PETERSON,** | : | **Civil No. 1:14-CV-1293** |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **v.** | : | |
| | : | |
| **CAROLYN W. COLVIN,** | : | |
| Acting Commissioner of | : | |
| Social Security | : | |
| | : | |
| **Defendant.** | : | |

## <u>MEMORANDUM OPINION</u>

This is an action brought under 42 U.S.C. 405(g), seeking judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Harold M. Peterson's application for disability insurance benefits under Title II of the Social Security Act. This matter has been referred to the undersigned United States Magistrate Judge on consent of the parties, pursuant to the provisions of 28 U.S.C. §636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Docs. 9, 10).

In this case, Plaintiff suffers from the impairment of chronic myeloid leukemia ("CML"). Although Plaintiff's CML is now in remission, his oncologist has advised him to continue taking an oral chemotherapy drug called Tasigna as part of this on-going leukemia treatment. Plaintiff asserts that taking this medication causes certain

severe, and disabling, side effects, including crippling fatigue and muscle aches. Although the ALJ recognized that Plaintiff did indeed suffer from some degree of pain and fatigue, she ultimately concluded that there was no objective evidence or medical signs supporting Plaintiff's and his treating sources' opinions that Plaintiff could not engage in light work. This disagreement forms the basis for Plaintiff's argument for reversal, or remand.

As we discuss below, in reaching this decision, the ALJ was required to weigh the competing opinions of two treating sources, who opined that Peterson faced severe limitations, and two non-treating sources, who concluded that Peterson still had the residual capacity to work. The ALJ resolved this conflict in favor of the non-treating sources, stating that the treating source opinions deserved little weight because "no signs or laboratory findings [supported the opinions] and these limitations are not supported by his own clinical findings or other medical evidence of record." (Tr. 34.) However, in reaching this conclusion the ALJ does not mention, discuss, address or acknowledge some significant supporting clinical evidence that is consistent with these treating source opinions, a July 2013, physical therapist assessment, (Tr. 424, 431-37), which detailed a "major functional loss" suffered by Peterson. Even though this physical therapist assessment was expressly endorsed by

one of the treating courses, Dr. Evers, the ALJ does not allude to this evidence at all in making the decision to afford these treating sources little weight.

This silence regarding material evidence in this case defeats any reasoned assessment of this aspect of the ALJ's opinion, since "[i]n the absence of s[ome analysis by the ALJ], the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 981). Mindful of the fact that "[w]hen a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.' Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir.1993)," Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999), we find that the failure to address this evidence in any fashion calls for a remand of this case for further proceedings. As such, we **VACATE** the decision of the Commissioner denying Plaintiff's application for benefits, and **REMAND** this matter for a new administrative hearing.

## I.   BACKGROUND AND PROCEDURAL HISTORY

On February 21, 2013, Plaintiff protectively filed a Title II application for disability insurance benefits. Plaintiff alleges that he became unable to work on April 28, 2012, due to Bulging Disc Injury, Lumbar Spine Impairment, Acute Leukemia,

and Severe Back Pain.[1]  (Admin Tr. 118).  The disabling symptoms alleged by Plaintiff appear to be the result of the combination of his musculo-skeletal back impairment and due to the symptoms and treatment side effects of CML.

Plaintiff was diagnosed with probable CML in November 2011 after he reported symptoms of increased fatigue, abdominal discomfort, and exhibited a combination of splenomegaly and a critical elevation in his blood cell count.  (Admin Tr. 310).  A CT scan of Plaintiff's abdomen taken on November 10, 2011, revealed "massive" splenomegaly and hepatomegaly.  (Admin Tr. 163).  This CT scan also revealed the presence of degenerative disc disease at L5-S1 with mild osteoarthritic change of the spine.[2]  Id.  Plaintiff's diagnosis of CML was confirmed after a bone marrow aspiration and biopsy.  (Admin Tr. 245-63).  Plaintiff began oral chemotherapy to treat is condition with the drug Tasigna.

After his diagnosis, Plaintiff continued to follow up with his oncologist, Dr. Brooks.  During these visits Plaintiff reported poor sleeping habits and chronic

---

[7]There is no evidence that Plaintiff has ever been diagnosed with "Acute Leukemia" – the more aggressive form of Leukemia.  The record reflects that Plaintiff has been diagnosed with a form of "Chronic Leukemia," which has a more gradual onset in most cases.

[7]A second CT scan on August 27, 2012, revealed degenerative arthritis of the vertebral bodies with minimal to moderate osteophyte formation, and degenerative disc disease with narrowing of the disc space and vacuum phenomenon at L5-S1.  (Admin Tr. 165).

fatigue.  However, together with his complaints of fatigue, in March 2012 Plaintiff reported that he was "feeling good" and "working hard."  (Admin Tr. 178).  In January 2013, Plaintiff complained of abdominal swelling, right testicle enlargement, and anxiety/panic attacks.  (Admin Tr. 169).

In May 2012, Plaintiff had a second bone marrow aspiration and biopsy.  This biopsy revealed that Plaintiff was in cytogenic remission, (Admin Tr. 281), however the BCR-ABL gene was still present in Plaintiff's blood.  (Admin Tr. 274-81).  Plaintiff's oncologist continued to monitor the BCR-ABL levels in Plaintiff's blood on a quarterly basis, and Plaintiff continued to take Tasigna.  In September 2012, testing revealed residual amounts of BCR-ABL gene in Plaintiff's blood.  In January 2013, testing revealed residual amounts of the BCR-ABL gene in Plaintiff's blood.

While battling cancer, Plaintiff's condition was also monitored by Dr. Evers, a specialist in internal medicine.  Dr. Evers noted that Plaintiff had been diagnosed with CML, Hyperlipidemia, and Hypertension, and as a result of these impairments had developed a lesion in his adrenal gland, a lesion in his kidney, suffered from splenomegaly (resolving with treatment), and was briefly hospitalized for chest pain in April 2012.

During an administrative hearing, Plaintiff testified that he last worked for an apartment complex doing indoor and outdoor maintenance.  He testified that, in that

5

position, he spent all day standing and walking, and was required to lift objects weighing up to one hundred pounds.  (Admin Tr. 45).  Plaintiff testified that he is able to read, write, add, and subtract, and has a valid driver's license. (Admin Tr. 47). Plaintiff also testified that his doctors has recommended that he undergo surgery on his lower back, however there was no evidence of a surgical recommendation in the record before the ALJ.  (Admin Tr. 48).  Despite his impairments, Plaintiff is independent in his personal care, occasionally helps out with simple household chores, cooks simple meals not requiring a stove, uses a computer for email and to look for part-time work on Craig's List, and occasionally reads the Bible.  (Admin Tr. 49-51).

Plaintiff testified that he lives in a split level home with his wife, but stays on the main level and only uses the stairs twice per week.  (Admin Tr. 51).  He also testified that he cannot reach overhead with his left arm, can stand for up to thirty minutes before he needs to sit, can sit for up to one hour before he needs to stand, and cannot walk more than a short distances without experiencing pain and shortness of breath. (Admin Tr. 51-52).  Plaintiff reported that he takes up to three two-hour naps per day due to fatigue.  (Admin Tr. 56).

Plaintiff reported that he is prescribed the following medications:  Tasigna; Lipitor (cholesterol); Oxycodone (pain); Cozaar (blood pressure); and Xanax

6

(anxiety).  Plaintiff testified that the side-effects of his Tasigna make him feel worse than he did before treatment; he experiences nausea after each dose of Tasigna, and feels general muscle aches he believes are caused by Tasigna.  (Admin Tr. 55-56). He also reported that his pain medications "take the edge off," but that his pain is worse when he lifts too much or shifts positions.  Standing, walking too long, and sitting too long exacerbate his pain.   (Admin Tr. 54).   He reported that his medications cause the side-effects of dizziness, impaired concentration, impaired memory, and generally leave him feeling "unsteady, unclear, [and] foggy."  (Admin Tr. 54).  His blood pressure and anxiety have improved with treatment.  (Admin Tr. 54).

The record in this case contains several medical opinions from treating and nonexamining sources, including:  treating internist, Dr. Evers; treating hematologist, Dr. Paracha; nonexamining source Dr. Menio; and nonexamining source, Dr. Bohn.

On March 8, 2013, nonexamining state agency medical consultant Mark Bohn, M.D., provided an assessment of Plaintiff's physical RFC based on the evidence that was in Plaintiff's file on that date.  (Admin Tr. 66-68).  He noted that, at the time of his assessment, Plaintiff had not yet supplied any evidence regarding his activities of daily living or work history.  Based on the objective medical evidence in Plaintiff's file, Dr. Bohn opined that Plaintiff could:  occasionally lift or carry up to twenty

pounds; frequently lift or carry up to ten pounds; stand or walk up to six hours per eight-hour workday; sit approximately six hours per eight-hour workday; frequently balance, stoop, kneel, crouch and crawl; occasionally climb raps or stairs; and never climb ladders, ropes, or scaffolds.  Dr. Bohn also found that Plaintiff should avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, hazards, and fumes, odors, dusts, gases, and poor ventilation.

On May 16, 2013, Dr. John Menio completed a medical source statement of Plaintiff's ability to do physical work-related activities.  (Admin Tr. 323-31).  Dr. Menio opined that Plaintiff could:  continuously lift or carry up to ten pounds, frequently lift or carry up to twenty pounds, and occasionally lift or carry up to one hundred pounds; sit up to three hours at one time, and for a total of up to six hours per eight-hour workday; stand up to three hours at one time, and for a total of up to six hours per eight-hour workday; walk up to three hours at one time, and for a total of up to six hours per eight-hour workday; continuously reach, handle, finger, feel, and push/pull with both hands; continuously operate foot controls with both feet; and, continuously climb, balance, stoop, kneel, crouch, and crawl.  Dr. Menio explained that his assessment was supported by the following evidence:  that Plaintiff's CML is in remission; Plaintiff's left spermatocele resolved with surgery; Plaintiff's right adrenal lesion was likely benign (no change in size); that Plaintiff's

8

heptospenomegaly was not causing a problem; and, that there was no supporting evidence of Plaintiff's back pain.

On June 19, 2013, Plaintiff's treating internist, Dr. Martin Evers, completed a check-the-box Cancer Impairment Questionnaire.  (Admin Tr. 391-97).  On the questionnaire, Dr. Evers reported that he began treating Plaintiff in November 2011, and most recently examined him in April 2013, Dr. Evers also reported that Plaintiff had been diagnosed with leukemia but did not discuss any other diagnoses.  Dr. Evers noted that Plaintiff's cancer had been treated with chemotherapy, but that it was unknown whether Plaintiff's condition was inoperable or unresectable, did not convey whether Plaintiff's condition had persisted despite antineoplastic therapy, and noted that Plaintiff's condition had metastasized beyond his regional lymph nodes. Dr. Evers identified that Plaintiff's complete blood count ("CBC") supported the diagnosis of leukemia.   Dr. Evers catalogued Plaintiff's primary symptoms as "leukocytosis/probable CML."[3]  Dr. Evers assessed that Plaintiff's condition caused

---

[7]Leukocytosis is defined as an increase in the number of leukocytes in the blood, and is normally seen with strenuous exercise and pathologically accompanying hemorrhage, fever, infection, or inflamation.  Dorland's Illustrated Medical Dictionary, 1028 (32nd Ed. 2012).  "Leukocytes" are also known as "white blood cells."  Id.

moderately severe daily abdominal pain and discomfort, and severe fatigue.[4]  Dr.
Evers also noted that Plaintiff's medication, Tasigna, caused the side-effects of
feeling faint, pain, and nausea.  Ultimately, Dr. Evers assessed that Plaintiff could sit
up to six hours per eight-hour workday, but was unable to stand or walk up more than
one hour per eight-hour workday.  Dr. Evers concluded his assessment with the
additional comment that "I do believe my patient Harold cannot handle a full time
workload.  His condition is expected to last more than 12 months." Id.

On June 24, 2013, Plaintiff's hematologist, Dr. Fauzia Paracha completed a
check the box Cancer Impairment Questionnaire.  (Admin Tr. 415-422).  In the
questionnaire, Dr. Paracha reported that Plaintiff's primary symptoms include nausea,
fatigue, muscle aches, shortness of breath, and chest pain.  Dr. Paracha also indicated
that Plaintiff's CML is an inoperable cancer that has persisted despite antineoplastic
therapy.  Dr. Paracha assessed that Plaintiff experienced "moderately severe" pain and
"moderately severe" fatigue.[5]  Dr. Paracha also explained that Plaintiff experienced

---

[7]The form completed by Dr. Evers required him to rate the severity of
Plaintiff's pain and fatigue on the following scale:  0-1 = none to trace; 2-3 = mild;
4-6 = moderate; 7-8 = moderately severe; 9-10 = severe.  (Admin Tr. 418).  Dr.
Evers rated Plaintiff's pain as a seven, or "moderately severe," and Plaintiff
fatigue as a 9-10, or "severe."

[7]The form completed by Dr. Paracha required him to rate the severity of
Plaintiff's pain and fatigue on the following scale:  0-1 = none to trace; 2-3 = mild;
4-6 = moderate; 7-8 = moderately severe; 9-10 = severe.  (Admin Tr. 418).  Dr.

constant muscular pain in his back, legs, and arms, and that Plaintiff's fatigue and pain are severe enough to frequently interfere with his attention and concentration. Dr. Paracha opined that, as a result of Plaintiff's impairment, he could: sit no more than four hours per eight-hour day, and could not sit continuously for more than one hour at a time; stand or walk no more than five hours per eight-hour day, but should not stand or walk continuously; occasionally lift or carry up to twenty pounds; and, never push, pull, kneel, bend, or stoop. Dr. Paracha also opined that Plaintiff would need unscheduled work breaks in excess of customary allowances and would be absent from work more than three times per month due to his impairments.

These opinions, in turn, were supported by other medical evidence, albeit evidence which was not addressed by the ALJ in this case. Specifically, on July 29, 2013, a physical therapist completed a spinal impairment questionnaire after examining Plaintiff. (Admin Tr. 424, 431-37). The physical therapist assessed that Plaintiff suffered from muscle weakness, spine dysfunction, loss of flexibility, balance deficits, and poor posture. The physical therapist observed that Plaintiff had a limited range of motion in his cervical and lumbar spine, was positive for tenderness and muscle spasm in his cervical and lumbar spine, exhibited muscle atrophy in his

---

Paracha rated Plaintiff's pain as a seven, or "moderately severe," and Plaintiff fatigue as an eight, also "moderately severe."

slow twitch ("ST") muscles, paraspinal muscles, abductors, and hips, and exhibited muscles weakness in his neck, shoulders, ST muscles, and all core muscles. The physical therapist also noted that, as of the date of his evaluation, Plaintiff could: sit for twenty minutes at one time; stand for ten minutes at one time; walk three to five minutes at one time; never bend, stoop, kneel; climb ladders; crawl short distances; climb steps using a railing; reach forward to shoulder height, and only reach above his shoulder with his right arm; drive short distances; occasionally carry up to ten pounds. The physical therapist also opined that Plaintiff demonstrated "major functional loss" and has been disabled since April 28, 2012. Id. Notably, Dr. Evers endorsed the questionnaire completed by the physical therapist, allowing an inference that the doctor agreed with these findings and was incorporating them into his own medical assessment of Mr. Peterson.

Plaintiff's claim was initially denied on April 10, 2013. Subsequent to this initial denial, Plaintiff requested an administrative hearing. On July 9, 2013, Plaintiff, assisted by counsel, appeared and testified during a hearing before an Administrative Law Judge ("ALJ") in Wilkes-Barre, Pennsylvania. An Impartial Vocational Expert ("VE") also appeared and testified at the hearing.

Following the ALJ's denial of his claim, Plaintiff appealed to next level of administrative review – the Appeals Council. Together with his request for review,

Plaintiff submitted additional evidence that was not included in the record before the ALJ. (Admin Tr. 438-445). On May 19, 2014, Plaintiff's request for review of the ALJ's decision denying his claim for benefits was denied by the Appeals Counsel. (Admin Tr. 1).

On July 3, 2014, Plaintiff initiated this action by filing a complaint. (Doc. 1). In his complaint, Plaintiff alleges that the ALJ's decision denying his claim is not supported by substantial evidence, and requests that the Court enter an order granting Plaintiff's application for benefits, or order such other relief as is proper. On September 12, 2014, the Commissioner filed her Answer, in which she asserts that the ALJ's decision is supported by substantial evidence. (Doc. 5). Together with her Answer, the Commissioner filed a copy of the administrative transcript. (Doc. 6). Having been fully briefed by the parties, this matter is now ripe for resolution. (Docs. 7, 8).

## II.   DISCUSSION

### A.   STANDARDS OF REVIEW–THE ROLES OF THE ADMINISTRATIVE LAW JUDGE AND THIS COURT

Resolution of the instant social security appeal involves an informed consideration of the respective roles of two adjudicators – the ALJ and this court. At

the outset, it is the responsibility of the ALJ in the first instance to determine whether a claimant has met the statutory prerequisites for entitlement to benefits.

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §423(1)(A); see also 20 C.F.R. §404.1505(a).

To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.   42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1505(a).  To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured.  42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.  20 C.F.R. §404.1520(a).  Under this framework, the ALJ must sequentially determine:   (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3)

whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §404.1520.  Between steps three and four, the ALJ must also assess a claimant's RFC.  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."  Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §404.1545.  In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §404.1545.

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work.  42 U.S.C. §423(d)(5); 20 C.F.R. §404.1512; Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).  Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §404.1512(f); Mason, 994 F.2d at 1064.

15

Once a final decision is issued by the Commissioner, and that decision is appealed to this Court, our review of the Commissioner's final decision is limited to determining whether the findings of the final decision maker – the ALJ in this case – are supported by substantial evidence in the record as it was developed before that decision maker.  See 42 U.S.C. § 405(g)(sentence five); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200(3d Cir. 2008); Ficca v. Astrue, 901 F.Supp.2d 533, 536(M.D.Pa. 2012).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988).  Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla.  Richardson v. Perales, 402 U.S. 389, 401 (1971).  A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence.  Mason, 994 F.2d at 1064.  But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).  "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole."

Leslie v. Barnhart, 304 F.Supp.2d 623, 627 (M.D.Pa. 2003). The question before this Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014)("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.")(alterations omitted); Burton v. Schweiker, 512 F.Supp. 913, 914 (W.D.Pa. 1981)("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990)(noting that the scope of review on legal matters is plenary); Ficca, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

The ALJ's disability determination must also meet certain basic procedural and substantive requirements. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for any disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons

for rejecting certain evidence.  Id. at 706-707.  In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding."  Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999).

The necessity of an adequate explanation by an ALJ of why evidence was rejected can be simply stated.  "In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored."  Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981).  As the United States Court of Appeals for the Third Circuit has observed:  "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'  Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir.1993).  The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects.  See Stewart v. Secretary of H.E.W., 714 F.2d 287, 290 (3d Cir.1983)."  Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999).

In his brief, Plaintiff has raised arguments relating to the sufficiency of the ALJ's evaluation of the medical opinion evidence of record and credibility of Plaintiff's subjective testimony about the severity of his symptoms.  Like the scope of this Court's review, the ALJ's analysis of these issues is governed by certain clear, and clearly established standards, which we have articulated below.

18

1.   GUIDELINES FOR THE ALJ'S ASSESSMENT OF MEDICAL SOURCE OPINIONS

The Social Security Rulings and Regulations provide a framework under which medical opinion evidence must be considered.  At the outset, we note that the Social Security Regulations discuss the nature of an acceptable medical source's treatment relationship with the claimant in terms of three broad categories: treating; examining; and non-examining.[6]  The Social Security Regulations also express a clear preference for opinions by treating sources.  See Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000)("a cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation over a prolonged period of time.").  Pursuant to 20 C.F.R. §404.1527(c)(2):

> if [the ALJ] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case  record, [the ALJ] will give it controlling weight.

---

[6] A treating source is defined as an acceptable medical source who provides or has provided a claimant with medical treatment or evaluation, and who has or had an ongoing treatment relationship with the claimant.   20 C.F.R. §404.1502.   A nontreating source is defined as an acceptable medical source that has examined the claimant but did not have an ongoing treatment relationship – like a consultative examiner.  Id.  A nonexamining source is defined as an acceptable medical source that has not examined the claimant, but has provided an opinion in the case – like a state agency reviewing doctor.  Id.

Id.; see also SSR 96-2p, 1996 WL 374188.  Furthermore, finding that the medical opinion of a treating source is not entitled to controlling weight does not mean the opinion should be rejected.  SSR 96-2p, 1996 WL 374188, at *1.  In many cases, a treating source's medical opinion will be entitled to great deference even where it is found to be non-controlling.  Id.  Notwithstanding the regulatory preference for treating source opinions, no rule or regulation prohibits an ALJ from relying on medical opinions by examining or nonexamining state agency physicians and psychological consultants to the extent that their opinions are consistent with the other substantial evidence of record.

Where the ALJ finds that no treating source opinion is entitled to controlling weight, the regulations provide that the weight of all non-controlling opinions by treating, examining, and non-examining medical sources should be evaluated based on the following factors:  (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. §404.1527(c).  In addition, the ALJ should consider any other factors that tend to support or contradict the opinion that were brought to his or her attention.  20 C.F.R. §404.1527(c)(6).

2.     GUIDELINES FOR THE ASSESSMENT OF A CLAIMANT'S SUBJECTIVE TESTIMONY ABOUT THE NATURE AND SEVERITY OF HIS SYMPTOMS AND FUNCTIONAL LIMITATIONS

An ALJ's findings based on the credibility of a claimant are to be accorded great weight and deference, since an ALJ is charged with the duty of observing a witness' demeanor and credibility. Frazier v. Apfel, No. 99-CV-715, 2000 WL 288246, at *9(E.D. Pa. Mar. 7, 2000)(quoting Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531(6th Cir. 1997)). Furthermore, in making a finding about the credibility of a claimant's statements, the ALJ need not totally accept or totally reject the individual's statements. SSR 96-7p, 1996 WL 374186. The ALJ may find all, some, or none of the claimant's allegations to be credible, or may find a claimant's statements about the extent of his or her functional limitations to be credible but not to the degree alleged. Id.

Notwithstanding the degree of deference to which an ALJ's credibility determinations are entitled, the ALJ's assessment of a claimant's credibility is governed by certain well-established principles. The ALJ must consider "all of the available evidence," including the claimant's medical history, signs and laboratory findings, the claimant's statements, and any opinions offered by medical and nonmedical sources, when assessing the intensity and persistence of a claimant's symptoms. 20 C.F.R. §404.1529(c)(1). The Social Security Administration has also

recognized that sometimes an individual's symptoms suggest a greater level of severity than can be shown by objective medical evidence alone.  SSR 96-7p, 1997 WL 374186 at *3.  As such, the Social Security Administration has developed a list of factors that the ALJ must consider in addition to the objective medical evidence when assessing the credibility of a claimant's statements about his or her symptoms, including:  the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's symptoms; the type, dosage, effectiveness, and side effects of any medications; treatment, other than medication; any measures other than treatment that the individual uses to relieve his or her symptoms; and any other factors concerning the claimant's limitations and restrictions.  See 20 C.F.R. §404.1529(c)(3).

### B.   ALJ's Decision Denying Plaintiff's Application for Benefits

In this case, the ALJ proceeded through steps one through five of the five-step sequential evaluation process before reaching her ultimate conclusion that Plaintiff was not disabled under the Social Security Act at any point between his alleged onset date, April 28, 2012, and the date the ALJ entered her decision, August 13, 2013.  In doing so, the ALJ found that Plaintiff met the insured status requirement of Title II of the Social Security Act through December 31, 2016. (Admin Tr. 30).  At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity between

22

April 28, 2012, and August 13, 2013.  Id.  At step two, the ALJ found that, during the relevant period Plaintiff had medically determinable severe impairments of CML, and degenerative disc disease/degenerative joint disease of the lumbar spine.   Id. Additionally, the ALJ found that the medical evidence of record establishes medically determinable non-severe impairments of hypertension, hyperlipidemia, mild splenomegaly/hepatomegaly, enlarged testicle/spermatocele, right adrenal nodule, and anxiety.  (Admin Tr. 30-31).  At step three the ALJ found that, during the relevant period, none of the above impairments considered singly or in combination met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Admin Tr. 32).

Before proceeding to step four the ALJ assessed Plaintiff's RFC.  In doing so, the ALJ was required to consider all of Plaintiff's alleged symptoms and the extent to which these symptoms could reasonably be accepted as true when considered together with the record as a whole based on the requirements of 20 C.F.R. §404.1529, and Social Security Rulings ("SSRs") 96-4p and 96-7p.  The ALJ was also required to weigh the credibility of medical and other opinion evidence of record in accordance with the requirements of 20 C.F.R. §404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.  After considering the entire record, the ALJ found that Plaintiff

retained the RFC to engage in light work as defined in 20 C.F.R. §404.1567(b),

except that:

> the claimant is limited to occasional right lower extremity pushing/pulling.  He is limited to occasional balancing and stooping, kneeling, crouching, and crawling.  He must avoid upper extremity overhead reaching.  He must avoid temperature extremes, humidity, vibration, fumes, and hazards.

(Admin Tr. 32).

At step four, the ALJ assessed Plaintiff's ability to engage in his past relevant work as a floor/carpet installer based on the above RFC.  The VE testified that Plaintiff's past relevant work fell outside of the parameters set forth by the ALJ's RFC assessment.  (Admin Tr. 60).  Relying on this testimony, the ALJ concluded that Plaintiff was unable to engage in his past relevant work.

At step five, the ALJ assessed Plaintiff's ability to engage in "other work," based on the consideration of the above RFC and the additional vocational factors of Plaintiff's age, education, and work experience.  The VE testified that such an individual could meet the demands of representative occupations such as: small parts bench assembler (DOT 706.684-022); stock worker (DOT 209.587-034); and weigher/checker (DOT 222.687-010).  (Admin Tr. 60).  Based on this testimony the ALJ concluded that Plaintiff could engage in "other work" despite his impairments.  The VE's testimony also revealed that these occupations exist in approximately

18,300 jobs in the state of Pennsylvania, and in 360,000 jobs in the national economy. (Admin Tr. 60).  The ALJ found that these jobs existed in "significant numbers" in the national economy.

Because she found that Plaintiff could engage in other work that exists in a significant number of jobs in the national economy, she concluded that Plaintiff was not disabled under the Social Security Act.

C.   A REMAND IS APPROPRIATE HERE TO ADDRESS SOME MATERIAL EVIDENCE WHICH WAS NOT EXPRESSLY TAKEN INTO ACCOUNT BY THE ALJ'S INITIAL DECISION

Plaintiff essentially alleges that the ALJ's RFC determination with respect to the work-related effects of his CML (and the medications used to treat it) and his other impairments is not in accordance with the applicable regulations, and is not supported by substantial evidence.  While the precise tenor of this argument is not entirely clear, broadly construing his brief we have discerned that Plaintiff raises the following contentions:  (1) the ALJ's rejection of medical source statements by Doctors Evers and Paracha is not supported by substantial evidence; (2) the ALJ improperly relied on the opinion of a nonexamining source; and (3) the ALJ's assessment of Plaintiff's credibility is not supported by substantial evidence. We will address these arguments *in seriatim*.

The ALJ cited the following bases for according "little" weight to opinions by

Doctors Evers and Paracha:

> The undersigned gives little weight to the medical source statement completed by Dr. Evers.  While Dr. Evers did not complete the entire medical source statement, he offered no sufficient basis for the limitations he did set forth, including no signs or laboratory findings and these limitations are not supported by his own clinical findings or other medical evidence of record.
>
> The undersigned also gives little weight to the opinion of Dr. Fruzia Paracha ... There are no signs or laboratory findings to support this opinion.  While the undersigned accommodated some of the specific limitations set forth in Dr. Paracha's medical source statement, the record simply does not support greater functional limitations.

(Admin Tr. 34).

First, Plaintiff contends that the ALJ's determination that there is no other medical evidence that supports Dr. Evers' decision is not supported by substantial evidence.  (Doc. 7 pp. 16-17).  We agree.

Plaintiff, in large part, focuses his argument on the fact that treatment records from his treating oncologist, Dr. Brooks, support Dr. Evers' assessment that Plaintiff suffers from "severe" fatigue.  Plaintiff suggests that Dr. Evers' opinion reflects that the severity of Plaintiff's fatigue would preclude the performance of light work. While there is some factual support for this argument,[7] we note that the Plaintiff also

---

[7]Dr. Brooks' treatment records reflect that: in March 2012, one month before he stopped working, Plaintiff complained of feeling chronically tired due to poor sleep habits, but otherwise reported that he was feeling good and working hard, (Admin Tr. 178); in August 2012, Dr. Brooks noted that Plaintiff complained of "profound fatigue," that led him to quit his job in April 2012,  (Admin Tr. 173);

takes issue with the ALJ's assessment of his back pain, and the fact that the combination of Plaintiff's back pain and fatigue erode his ability to stand for prolonged periods. (Doc. 7 pp. 16-17 n. 5). Notably, one of the few functional limitations addressed by Dr. Evers in his medical source statement was Plaintiff's inability to stand for more than one hour per eight-hour workday.

The ALJ discounted this and all other aspects of Dr. Evers' assessment because he did not set forth any signs or laboratory findings in support of his assessment and because the limitations in his assessment were not supported by the other evidence of record. (See Admin Tr. 34). Plaintiff contends that such objective evidence exists in the form of a July 2013 physical therapy evaluation and spinal impairment questionnaire, combined with a CT scan revealing degenerative disc disease at L5-S1. (Doc. 7 p. 17, n. 5). The ALJ did not address or refer to the physical therapy assessment or spinal impairment questionnaire at any point in her decision.

Although a physical therapist is not an "acceptable medical source" under the regulations, it is well-established that the ALJ is required to assess a claimant's RFC

in September 2012 Dr. Brooks noted that Plaintiff still felt tired, and quit his job. (Admin Tr. 171); and, in April 2013, Plaintiff told Dr. Brooks that he was "very tired" and could not work at his regular job. (Admin Tr. 375). During his hearing, Plaintiff testified that his "regular job" required him to stand all day and lift up to 100 pounds. (Admin Tr. 45). Thus, when read in the context of a record as a whole, while Dr. Brooks' treatment notes do reflect that Plaintiff did experience some degree of fatigue, they do not necessarily support the presence of fatigue of such severity that it would preclude all work.

based on "all the relevant evidence" in the claimant's case record.   20 C.F.R.

§404.1545; <u>see also</u> SSR 06-03p, 2006 WL 2329939 at *4 ("As set forth in

regulations at 20 404.1527(b) and 416.927(b), we consider all relevant evidence in

the case record when we make a determination or decision about whether the

individual is disabled.").   Furthermore:

> Since there is a requirement to consider all relevant evidence in an
> individual's case record, the case record should reflect the consideration
> of opinions from medical sources who are not "acceptable medical
> sources" ... Although there is a distinction between what an adjudicator
> must consider and what the adjudicator must explain in the disability
> determination or decision, the adjudicator generally should explain the
> weight given to opinions from these 'other sources,' or otherwise ensure
> that the discussion of the evidence in the determination or decision
> allows a claimant or subsequent reviewer to follow the adjudicators
> reasoning when such opinions may have an effect on the outcome of the
> case.

SSR 06-03p, 2006 WL 2329939 at *4.

Further, as we have noted an ALJ's decision must be accompanied by "a clear

and satisfactory explication of the basis on which it rests." <u>Cotter v. Harris</u>, 642 F.2d

700, 704 (3d Cir. 1981).  Conflicts in the evidence must be resolved and the ALJ must

indicate which evidence was accepted, which evidence was rejected, and the reasons

for rejecting certain evidence.  <u>Id.</u> at 706-707.  In addition, "[t]he ALJ must indicate

in his decision which evidence he has rejected and which he is relying on as the basis

for his finding." <u>Schaudeck v. Comm'r of Soc. Sec.</u>, 181 F.3d 429, 433 (3d Cir.

1999).  "In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." <u>Cotter v. Harris</u>, 642 F.2d 700, 705 (3d Cir. 1981).  As the United States Court of Appeals for the Third Circuit has observed:  "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.' <u>Mason v. Shalala</u>, 994 F.2d 1058, 1066 (3d Cir.1993).  The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects.  <u>See</u> <u>Stewart v. Secretary of H.E.W.</u>, 714 F.2d 287, 290 (3d Cir.1983)." <u>Plummer v. Apfel</u>, 186 F.3d 422, 429 (3d Cir. 1999).

Mindful of the fact that "[w]hen a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.' <u>Mason v. Shalala</u>, 994 F.2d 1058, 1066 (3d Cir.1993)," <u>Plummer v. Apfel</u>, 186 F.3d 422, 429 (3d Cir. 1999), we find that the failure to address this evidence in any fashion compels a remand of this case for further proceedings.  Here we regard the physical therapist evaluation, which was endorsed by Dr. Evers, as material medical evidence which was never addressed by the ALJ.  Because we cannot ascertain whether the ALJ properly considered the physical therapy evaluation when she concluded that Dr. Evers' opinion that Plaintiff was limited in the amount of time he could stand when she concluded that this limitations was not supported by "other

medical evidence of record," and because the ability to stand for prolonged periods is essential to the performance of most occupations class as light work, we must conclude that her decision to discount Dr. Evers' medical source statement is not supported by substantial evidence. See Burnett, 220 F.3d at 121-23 ("Because the ALJ erred in not evaluating all of the medical evidence, this Court cannot now assess whether the ALJ's determination that Burnett has the residual functional capacity to perform "light" work was supported by substantial evidence.").

The same logic applies to the ALJ's evaluation of Dr. Paracha's medical source statement. As such, we find that the ALJ's rationale for discounting Dr. Paracha's medical source statement is not supported by substantial evidence.

In sum, case law calls for a remand and further proceedings by the ALJ in this case further assessing this claim under the five-step sequential analysis applicable to such claims, expressly addressing this medical evidence. However, nothing in our opinion should be construed as suggesting what the outcome of that final and full analysis should be. Rather, that final assessment of the evidence must await a thorough consideration and development of this evidence. In this regard, we note that with respect to Plaintiff's contention that the ALJ improperly relied on the opinion of Dr. Bohn, over that of the opinions of Dr. Evers and Paracha, the ALJ may rely upon these other medical opinions. The Social Security regulations are clear that it

30

is the ALJ, and not the treating, examining, or nonexamining medical sources, that is responsible for assessing a claimant's RFC.  See 20 C.F.R. 404.1546(e).  Although opinions by treating and examining sources often deserve more weight than nonexamining sources, the opinion of a treating physician does not bind the ALJ on the issue of functional capacity.  Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011)(quoting Brown v. Astrue, 649 F.3d 193, 197 n. 2 (3d Cir. 2011)).  Opinions by nonexamining state agency consultants, like Dr. Bohn, can and should be given weight insofar as they are supported by evidence in the case record and based on the ALJ's consideration of the factors outlined in 20 C.F.R. §404.1527.  SSR 96-6p, 1996 WL 374180 at *2.  However, for the same reasons articulated above, we cannot find that this assessment of the evidence is supported by substantial evidence because we cannot reasonably conclude that the ALJ considered this opinion in light of all relevant evidence of record.  Of particular import in this instance is the fact that, when Dr. Bohn issued his RFC assessment, he did not have the benefit of reviewing the physical therapy evaluation and spinal impairment questionnaire.  On remand, if the ALJ chooses to rely on Dr. Bohn's RFC assessment, she should provide some insight as to how she reconciled this opinion with the contrary objective findings in subsequent physical therapy evaluation.

### III.   CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED THAT**:

1. The Clerk of Court shall enter judgment in favor of Plaintiff Harold Peterson and against the Commissioner of Social Security as set forth in the following paragraph.

2. The decision of the Commissioner of Social Security denying Mr. Peterson's application for benefits is **VACATED** and this case is **REMANDED** to the Commissioner of Social Security to conduct a new hearing and appropriately evaluate all of the medical and other evidence of record.

3. The Clerk of Court shall close this case.

An order consistent with this memorandum shall be entered separately.


*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge


Dated: July 10, 2015

32